FILED 2026 OCT 5 PM 5:00 CLERK-USDC-FLMD-ORL

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.

CASE NO. 6:26-cr- 253- AGM- RMN
18 U.S.C. § 1349
(Conspiracy)

RICHARD EXPOSITO

# INFORMATION

The United States charges:

## COUNT ONE
## (Conspiracy to Commit Bank Fraud)

### A. Introduction

At times material to this Information:

1. Mortgage Company 1 was a financial institution as defined by the Fraud Enforcement and Recovery Act of 2009, that is, an organization that financed and refinanced debt secured by an interest in real estate and with activities that affected interstate and foreign commerce. Mortgage Company 1 originated mortgage loans in the Middle District of Florida and elsewhere.

2. It was the practice of many lending institutions, including Mortgage Company 1, to make loans secured by real property to borrowers or to refinance existing loans secured by real property. Such loans were typically called mortgages or mortgage loans. In determining whether to extend such loan, it was the practice of Mortgage Company 1 to rely upon the information contained in a borrower's mortgage-related documents, such as the Form 1003, Uniform Residential Loan

Application (referred to herein as the loan application), the Closing Disclosure, and the mortgage itself.

3. The loan application and supporting documentation were relied on by mortgage lenders in the mortgage loan approval process. The loan application required the borrower to truthfully provide the mortgage lender with various types of information, including the borrower's place and length of employment, gross monthly income, source of downpayment and closing costs, financial assets and liabilities, intended use of the property (such as investment or secondary residence), and the specific details of the anticipated real estate transaction.

4. When Mortgage Company 1 received a loan application, this typically triggered what was known in the mortgage industry as the underwriting process. The primary purpose of the underwriting process was to determine the ability of the borrower to repay the mortgage loan being requested. During the underwriting process, Mortgage Company 1 considered a variety offactors in determining whether to issue a mortgage loan, including the borrower's sources of income, assets, and liabilities. Mortgage Company 1 considered the amount and source of a borrower's gross income and assets on hand to be important factors in assessing a borrower's financial health and determining the borrower's ability to repay the mortgage loan.

5. Mortgage Company 1 required pay stubs, bank account statements, pension statements, and other supporting documentation to be submitted to further verify a borrower's financial condition and ability to pay.

6. **RICHARD EXPOSITO** (hereinafter "**EXPOSITO**") was a licensed loan officer at Mortgage Company 1, who originated mortgage loans for properties located within the Middle District of Florida, and elsewhere.

7. Co-conspirator Kiomy Torres (hereinafter "Torres") was a resident of the Middle District of Florida.

8. Amusement Company 1 operated theme parks in the Middle District of Florida and offered a pension benefit plan to employees.

9. The Commonwealth of Puerto Rico was a territory of the United States that operated a disability insurance program for government employees.

**B. <u>The Conspiracy</u>**

10. From an unknown date, but at least as early as in or around December 2016, and continuing through in or around July 2019, in the Middle District of Florida, and elsewhere, the defendant,

**RICHARD EXPOSITO,**

did willfully and knowingly combine, conspire, confederate and agree with Kiomy Torres and others known and unknown to the United States, to knowingly, and with intent to defraud, execute and attempt to execute a conspiracy to defraud financial institutions, and to obtain monies, funds, credits, assets, and other property owned by, and under the custody and control of, one or more financial institutions, by means of materially false and fraudulent pretenses, representations, promises, and omissions relating to a material fact, in violation of 18 U.S.C. § 1344.

## C. Manner and Means of the Conspiracy

12. The manner and means by which **EXPOSITO**, Torres, and others sought to accomplish the object of the conspiracy included, among others, the following:

a. It was part of the conspiracy that **EXPOSITO** would and did receive referrals from Torres and others of individuals seeking mortgage financing to purchase residential real estate in the Middle District of Florida.

b. It was a further part of the conspiracy that Torres would and did collect information from individuals seeking mortgages including, but not limited to, employment related documents, bank account statements, drivers' licenses, and Social Security cards to assist in the preparation of mortgage loan applications.

c. It was a further part of the conspiracy that Torres provided the legitimate borrower's financial information provided by the buyers to **EXPOSITO** to obtain mortgage loan approval and funding for the individuals referred to her.

d. It was a further part of the conspiracy that after reviewing the borrower's financial information provided by Torres, **EXPOSITO** would and did determine that these individuals had insufficient income and/or assets, or excessive liabilities and would and did communicate to Torres how much more income and/or assets were required to qualify for the mortgage loan.

e. It was a further part of the conspiracy that **TORRES** would and did create false pay stubs, Amusement Company 1 pension statements, and Puerto

Rico disability payment statements, and would and did alter legitimate bank statements or create fictitious bank statements to match the amounts communicated by **EXPOSITO**.

f. It was a further part of the conspiracy that **EXPOSITO** would and did receive and submitted or caused to be submitted to Mortgage Company 1's underwriting department the false and fraudulent pay stubs, Amusement Company 1 pension statements, and Puerto Rico disability payment statements, and altered legitimate bank statements or fictitious bank statements, notwithstanding the fact that said individuals had never worked for any of the companies, never received pension/disability payments, or had insufficient bank account balances, in order to deceive Mortgage Company 1 into approving mortgages for the individuals.

g. It was a further part of the conspiracy, that **EXPOSITO** would and did knowingly create and caused to be created mortgage loan applications containing false and fraudulent income, employment, asset information, and submitted and caused to be submitted these fraudulent applications to Mortgage Company 1's underwriting department to deceive Mortgage Lending Company 1 into approving and funding mortgage loans for otherwise unqualified borrowers.

h. It was a further part of the conspiracy the **EXPOSITO** would and did cause to be sent the final mortgage loan application to real estate settlement companies in the Middle District of Florida where the applications were signed by the borrowers, which caused Mortgage Company 1 to fund the purchases of

residential real estate in Orange County, Volusia County, Seminole County and elsewhere.

i. It was a further part of the conspiracy that after the individuals were approved for mortgages and closed on the properties, **EXPOSITO** would and did compensate Torres with cash and gifts or provided her with retailer gift cards for falsifying the documents required by Mortgage Company 1.

j. It was a further part of the conspiracy that **EXPOSITO** would and did collect ill-gotten mortgage loan commissions from Mortgage Company 1 for his role in the conspiracy.

k. It was a further part of the conspiracy that **EXPOSITO** and other conspirators would and did perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the object and purposes of the conspiracy and the acts committed in furtherance thereof.

All in violation of 18 U.S.C. § 1349.

## FORFEITURE

1. The allegations contained in Count One are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

2. Upon conviction of bank fraud conspiracy, in violation of 18 U.S.C. § 1349, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which

constitutes or is derived from proceeds traceable to the offense.

3. The property to be forfeited includes, but is not limited to, the following: an order of forfeiture for at least $18,648.37, which represents the amount of proceeds the defendant obtained as a result of the offense.

4. If any of the property described above, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

Respectfully Submitted

GREGORY W. KEHOE
United States Attorney

By: ______________________
Christopher Poor
Assistant United States Attorney

By: ______________________
Hannah Watson
Assistant United States Attorney
Deputy Chief, Orlando Division